STATE OF NEBRASKA EX REL.
PAUL L. DOUGLAS, ATTORNEY
GENERAL, APPELLEE, V.
JOY SPORHASE ET AL., APPELLANTS.

305 N.W.2d 614

Filed May 8, 1981.  No. 43206.

Peter E. Schoon, Jr., and George M. Zeilinger of Padley & Dudden, P.C., for appellants.

Steven C. Smith, Special Assistant Attorney General, of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

Appellants own adjacent tracts of land in Chase County, Nebraska, and in Phillips County, Colorado. A well physically located on the Nebraska tract pumps ground water for the purpose of irrigating crops on both the Nebraska tract and the Colorado tract. Defendants' predecessor in title registered the well with the State of Nebraska on January 18, 1971, as required by Neb. Rev. Stat. § 46-602 (Reissue 1978). However, neither the defendants nor their predecessor in title applied to the Nebraska Department of Water Resources for a permit to transport ground water from the Nebraska well across the border into Colorado as required by Neb. Rev. Stat. § 46-613.01 (Reissue 1978).

The State of Nebraska brought this action in the District Court of Chase County to enjoin defendants from transporting Nebraska ground water into Colorado without a permit. After trial on the merits, the

District Court issued the injunction, holding that § 46-613.01 does not violate the commerce clause of U.S. Const. art. I, § 8, since under Nebraska law water is not an article of commerce. The District Court also held that even if ground water is an article of commerce, the statute does not impose an unreasonable burden on interstate commerce. We affirm.

We start our analysis with the assumption that if the commerce clause is to apply to a state statute regulating the interstate transfer of a commodity, that commodity must be an "article of commerce." The term "commerce" implies that the commodity must be capable of being reduced to private possession and then exchanged for goods or services of the same or similar economic value. An analysis of Nebraska case law and statutes demonstrates that Nebraska law has never considered ground water to be a market item freely transferable for value among private parties, and therefore not an article of commerce.

The first Nebraska case to consider the overlying landowner's proprietary interest in water under his land is *Olson v. City of Wahoo*, 124 Neb. 802, 248 N.W. 304 (1933). The *Olson* court specifically rejected the "English rule" of rights in ground water, which recognizes absolute ownership of ground water in the overlying landowner. Instead, the court adopted a slightly modified version of the more restrictive American rule of "reasonable use": "The American rule is that the owner of land is entitled to appropriate subterranean waters found under his land, but he cannot extract and appropriate them in excess of a reasonable and beneficial use upon the land which he owns, especially if such use is injurious to others who have substantial rights to the waters, and if the natural underground supply is insufficient for all owners, each is entitled to a reasonable proportion of the whole, and while a lesser number of states have adopted this rule, it is, in our opinion, supported by the better reasoning." *Id.* at 811, 248 N.W. at 308. The "pure" American rule,

as stated by other authorities at the time, did not include the concept of sharing in times of shortage, and the *Olson* court's inclusion of that concept demonstrates its view that water is a unique commodity subject to state regulation to assure that it is available to everyone in the state in relation to their need, rather than their ability to pay for it.

The Nebraska Constitution declares water for irrigation purposes in the State of Nebraska to be a natural want. Neb. Const. art. XV, § 4. The decades of the 1930s and 1940s saw a quantum expansion in Nebraska of the use of ground water for irrigation. See Aiken, *Nebraska Ground Water Law and Administration*, 59 Neb. L. Rev. 917 (1980). Legislative recognition of the state's power and the corresponding need to manage the state's ground water resources began in 1957 when the Legislature declared "that the conservation of ground water and the beneficial use thereof are essential to the future well-being of this state." Neb. Rev. Stat. § 46-601 (Reissue 1978), and enacted statutes requiring well registration, well-spacing, and filling of abandoned wells. Neb. Rev. Stat. §§ 46-602 and 46-609 (Reissue 1978).

Transfer of ground water was considered by the Legislature in 1963. Neb. Rev. Stat. §§ 46-638 through 46-650 (Reissue 1978), enacted that year, and § 46-654, enacted in 1965, granted only to cities, villages, and municipal corporations the right to transport ground water out of its basin of origin for the purpose of supplying urban water needs. Since the Nebraska common law of ground water permitted use of the water only on the overlying land, legislative action was necessary to allow for transfers off the overlying land, even for as pressing a need as supplying urban water users.

*Metropolitan Utilities Dist. v. Merritt Beach Co.*, 179 Neb. 783, 799-800, 140 N.W.2d 626, 636 (1966), confirmed that "[u]nderground waters, whether they be percolating waters or underground streams, are

a part of the waters referred to in the Constitution as a natural want. . . [I]t is becoming more important and extremely necessary that regulation and control of all sources of water supply be attained." That court held that it is "the right of the Legislature, unimpaired, to determine the policy of the state as to underground waters and the rights of persons in their use." *Id.* at 801, 140 N.W.2d at 637. The opinion clearly held that the Legislature has the power to determine public policy with regard to ground water and that it may be transferred from the overlying land only with the consent of and to the extent prescribed by the public through its elected representatives.

Only a year after the decision in the *Metropolitan* case, the Legislature enacted the statute at issue in this case, § 46-613.01, dealing with transfer of Nebraska ground water across state lines. The statute allows such transfers conditioned on the receipt of a permit from the director of the Department of Water Resources, who may grant the permit if the transfer "is reasonable, is not contrary to the conservation and use of ground water, and is not otherwise detrimental to the public welfare," and if the receiving state "grants reciprocal rights" providing for transfer of ground water from that state into Nebraska.

The parties concede that Colorado forbids the transfer of ground water outside its borders and has no reciprocity provision in its statute. Neither the courts nor the Legislature of Nebraska have considered Nebraska ground water as an article of commerce. Free transfer and exchange of ground water in a market setting have never been permitted in this state, since the water itself is publicly owned. The public, through legislative action, may grant to private persons the right to the use of publicly owned waters for private purposes; but as the *Olson* opinion demonstrates, with its emphasis on sharing in times of shortage, the public may limit or deny the right of private parties to freely use the water when it de-

termines that the welfare of the state and its citizens is at stake. Even where it appears that water itself is being marketed, as in municipal water supply arrangements, it is the value of the cost of distributing the water that is the basis of the rate structure and not the value of the water itself. See *K. S. B. Tech. Sales v. North Jersey Dist. Water Supply*, 75 N.J. 272, 381 A.2d 774 (1977).

Appellants in their brief place great reliance on the case of *City of Altus, Oklahoma v. Carr*, 255 F. Supp. 828 (W.D. Tex. 1966), *aff'd per curiam* 385 U.S. 35, 87 S. Ct. 240, 17 L. Ed. 2d 34 (1966), which held that a Texas statute forbidding interstate transfers of water without legislative permission placed an unconstitutional burden on interstate commerce. However, at the time of *Altus*, Texas law treated ground water much differently than Nebraska. Texas recognized the absolute ownership of subterranean water in the overlying landowner. This is in sharp contrast to the narrowly circumscribed right of reasonable use only on the overlying land recognized in Nebraska. In addition, the *Altus* court noted that, in Texas, "after the water has been appropriated, the landowner, his lessee or assign, has the right to sell the water to others for use off of the land and outside the basin where produced, just as he could sell any other species of property." *Id.* at 840. In sum, said the *Altus* court, "the general law of the State of Texas . . . recognizes water that has been withdrawn from underground sources as personal property subject to sale and commerce . . . ." *Id.* at 840. Since the only transfers, prohibited by Texas law were interstate transfers, *Altus* found that Texas considered ground water to be an article of commerce, subject to the commands of the commerce clause of the U.S. Constitution. However, intrastate transfers of ground water in Nebraska are permitted only under carefully prescribed conditions and do not resemble a free-market setting. Ground water use is not an unlimited private property

right in Nebraska law. The decision in *Altus* is not controlling. Nebraska ground water is not an article of commerce and thus not subject to the strictures of the commerce clause.

Since the *Altus* case was affirmed without opinion by the U.S. Supreme Court, we must assume that the high court had no quarrel with the District Court's application of the law to the particular facts of *Altus*. However, we need not and do not assume, as appellants would have us do, that *Altus* "overruled *sub silentio*" the 70-year-old holding in *Hudson Water Co. v. Mc-Carter*, 209 U.S. 349, 28 S. Ct. 529, 52 L. Ed. 828 (1908), that a state may, under its police power, forbid or condition the interstate transfer of its water resources without running afoul of the commerce clause. The *Hudson* case upheld the constitutionality of a New Jersey statute prohibiting the transfer of New Jersey surface water out of the state. The court noted that "[a] man cannot acquire a right to property by his desire to use it in commerce among the States," and emphasized that the state as *"quasi*-sovereign and representative of the interests of the public has a standing in court to protect the atmosphere, the water and the forests within its territory, irrespective of the assent or dissent of the private owners of the land most immediately concerned. . . . It finds itself in possession of what all admit to be a great public good, and what it has it may keep and give no one a reason for its will." *Id.* at 355-57.

There have been other U.S. Supreme Court cases limiting the rights of individual states to put conditions on the interstate transfer of natural resources other than water, such as natural gas and minnows. *Penna v. West Virginia*, 262 U.S. 553, 43 S. Ct. 658, 67 L. Ed. 1117 (1923); *Oklahoma v. Kansas Nat. Gas Co.*, 221 U.S. 229, 31 S. Ct. 564, 55 L. Ed. 716 (1911); *Hughes v. Oklahoma*, 441 U.S. 322, 99 S. Ct. 1727, 60 L. Ed. 2d 250 (1979). However, we note that the natural resources dealt with in those cases have historically

been market items, reducible to private possession and freely exchangeable for value. This has never been the case with underground water in Nebraska. Further, since water is the only natural resource absolutely essential to human survival, the application of rules designed to facilitate commerce in less essential resources to the transfer of water must be done, if at all, with extreme caution. It is this caution which prevents us from holding that Nebraska ground water is an article of commerce. Because the ground water in this case is not an article of commerce, the commerce clause considerations do not apply to the Nebraska statute at issue here.

Appellants also urge that § 46-613.01 violates the due process provisions of the fifth and fourteenth amendments to the Constitution of the United States, which prohibit the United States or an individual state from depriving an individual of life, liberty, or property without due process of law. Although the arguments in the "due process" section of appellants' brief are actually equal protection arguments, we note that conditioning a landowner's right to transfer ground water either within or without Nebraska does not deprive him of a property right, since, under Nebraska common law, ground water may not be transferred off the overlying Nebraska land at all unless the public, owners of the water, grant that right. Not being at liberty to transport ground water without public consent and having no private property right in the water itself, appellants are deprived of neither liberty nor property by § 46-613.01.

Nor does the reciprocity provision of § 46-613.01 violate constitutional guarantees of due process, as appellants claim, by delegating legislative authority to the legislature of another state. The Nebraska Legislature has exercised its legislative authority by determining the public policy of the state with regard to ground water and enacting that determination into law. It has not delegated to any other state's legislature

the right to determine Nebraska public policy. The reciprocity provision is merely one of several conditions to be satisfied before a permit to transport water out of state may be granted. As stated in *Lennox v. Housing Authority of City of Omaha*, 137 Neb. 582, 590, 290 N.W. 451, 457 (1940): "The providing of such contingencies upon which the law might properly be limited to take effect does not constitute a delegation of legislative power. The applicable rule is: The legislature cannot delegate its powers to make a law, but it can make a law to become operative on the happening of a certain contingency or on an ascertainment of a fact upon which the law intends to make its own action depend."

In *State v. Padley*, 195 Neb. 358, 237 N.W.2d 883 (1976), the statute at issue set a 55-mile-per-hour speed limit on the portion of Interstate 80 crossing Nebraska, but declared that when the President terminates the Emergency Highway Energy Conservation Act such speed limit will revert to 75 miles per hour. The *Padley* court held that: "In so doing the Legislature has not delegated its power to make the law but has designed its alternative provision to become effective on the happening of a certain contingency." *Id.* at 360, 237 N.W.2d at 885. That court also stated that the rule set out in *Lennox* "is a well-recognized rule of law." *Id.* at 360, 237 N.W.2d at 885. The granting of a permit to transport water for irrigation out of state is contingent upon, among other things, the receiving state granting its landowners the same right. Each state is free to determine its own public policy with regard to ground water transfers and to condition the right to transfer on one or more contingencies. Thus, there has been no unconstitutional delegation of legislative power by the Nebraska Legislature.

Appellants finally argue that § 46-613.01 violates the equal protection clause of the fourteenth amendment to the U.S. Constitution by virtue of an unreasonable classification. The class upon which

§ 46-613.01 operates consists of those persons wishing to transport Nebraska ground water out of state for irrigation purposes. It is plain from the language of the statute that the classification is reasonable. It is related to a legitimate state interest in preserving, for the beneficial use of its citizens, Nebraska's underground water supply, and it operates equally on all members of the class. Any person wishing to transport ground water out of state for irrigation purposes must apply for a permit to do so and the director of the Nebraska Department of Water Resources is to use the same guidelines in every instance in determining whether or not the permit may issue. That the statute does not apply to irrigators who do not wish to transport ground water out of state hardly makes it violative of equal protection.

The judgment of the District Court is affirmed.

AFFIRMED.

KRIVOSHA, C.J., concurring in part, and in part dissenting.

While I generally concur with the majority's conclusion that establishing legislative criteria to control the transfer of water from the State of Nebraska to an adjoining state is not a violation of the commerce clause of the U.S. Constitution, I must respectfully dissent from that portion of the majority's opinion which holds that the statutory prohibition against the issuance of the permit, if the adjoining state does not grant reciprocity, is a constitutionally valid act of the Legislature. I believe that that portion of Neb. Rev. Stat. § 46-613.01 (Reissue 1978) which prohibits the Director of Water Resources from issuing a permit solely on the basis that the adjoining state does not grant reciprocity is an unreasonable classification and violates both the Constitution of the United States and the Constitution of the State of Nebraska.

Were the statute in question to provide that no person, firm, city, village, municipal corporation, or any other

entity, including a citizen of the State of Nebraska, could use water from this state on land owned by such entity in both this state and an adjoining state unless and until the Director of Water Resources found that the water request was reasonable, was not contrary to the conservation and use of ground water, and was not otherwise detrimental to the public welfare, I would have no difficulty with the statute. But the statute as it currently exists provides that even though the director might find that the request is reasonable and that to deny it would be unreasonable, that the request is not contrary to the conservation and use of ground water in this state and, to the contrary, is in furtherance of the conservation and use of ground water in this state, and that it is not otherwise detrimental to the public welfare, but in fact is beneficial to the public welfare, he, nevertheless, cannot issue such permit, solely on the basis that the adjoining state does not permit entities, including its own citizens, to transport water into this state.

The issue here is not whether reciprocal legislation is constitutional, but whether a citizen of the State of Nebraska can be prohibited from using water on land owned by that citizen in both this state and in an adjoining state solely on the basis that the adjoining state would not reciprocate. If one were to extend this statute to its logical conclusion, one could find that even though there was an abundance of water in an area in Nebraska, so much so that flooding was imminent, the water could not be transferred to adjoining land because the adjoining state refused to grant reciprocity. It occurs to me that what this statute attempts to do is to absolutely prohibit the transfer of water, without regard to its need or availability, based solely upon the acts of another state over which citizens of this state have no control.

To permit citizens of one part of the state to care for their land situated both in this state and an adjoining state because the adjoining state permits

reciprocity, though it may not have water which can be transferred, while denying that privilege to other citizens of this state solely on the basis of the action of an adjoining state and without regard to either the reasonableness of the prohibition at a particular moment or its need, strikes me as being a violation of Neb. Const. art. III, § 18, and art. I, § 3, and the fifth and fourteenth amendments to the U.S. Constitution. I would have struck down that portion of § 46-613.01 which denies authority to the director if the adjoining state does not otherwise grant reciprocity.