REQUESTED BY: Senator Rod Johnson
Does the provision making the operation of LB 68 effective upon all contiguous states passing an identical act constitute an unlawful delegation of legislative authority?
Does LB 68 violate the Interstate Commerce clause of the United States Constitution?
No.
Although LB 68's violation of the Commerce clause is not clear, considering the fact that the state, and most if not all other states, have adhered to a lower federal rate of MSNF (Milk-Solids-Not-Fat) content of milk for many years would make defense of the increase difficult, particularly if there was evidence that the purpose of the increase was to promote the economic well-being of producers within the state at the expense of those in other states.
You have asked if Section 2 of LB 68 constitutes an unlawful delegation of legislative authority.
Section 2 provides that the act shall become operative "when all states contiguous to the borders of the State of Nebraska have in effect milk content requirements identical to those requirements established by this legislative bill."
As a general rule a statute may take effect upon the happening of a contingency, such as a passage of a law in another jurisdiction, the vote of the people, or the passage of a constitutional amendment. Sutherland Statutory Construction, Section 33.07 (1986).
In State v. Padley, 195 Neb. 358, 237 N.W.2d 883
(1976), our supreme court dealt with a statute which fixed highway speeds at a maximum of 55 mph and then provided that when the president terminates the Emergency Highway Energy Conservation Act the permissible speed shall be 75 mph "or such speed as Congress requires for compliance with such act, whichever is the lesser."
To the issue of whether or not the legislature could delegate to Congress the authority to designate the speed limit in Nebraska our supreme court held: The legislature cannot delegate its powers to make a law, but it can make a law to become operative on the happening of a certain contingency or on ascertainment of a fact upon which the law intends to make its own action depend. See also, Lennox v. Housing Authority of the City of Omaha, 137 Neb. 582,290 N.W. 451 (1940).
The same rule was applied in State ex rel. Douglas v. Sporhase, 208 Neb. 703, 305 N.W.2d 614 (1981) where a law authorizing the granting of a permit to transport water for irrigation out-of-state contingent upon the receiving state granting its landowners the same right was held not to be an unlawful delegation of its powers to make a law.
It is therefore our conclusion that the provision making LB 68 effective upon the enactment of its same provisions by all states bordering upon Nebraska would not be an unlawful delegation of the legislature's authority.
You have also asked if LB 68 violates the Interstate Commerce clause of the United States Constitution by establishing a different milk-content requirement for milk sold in Nebraska than that sold in other states.
In answer we call particular attention to the provision of LB 68 which would raise the milk-solids-not-fat content of pasteurized milk to 8.7 percent from the federally established 8.25 percent.
From our examination of a number of cases dealing generally with the subject of higher state standards for dairy products than that prescribed under the federal standards we cannot say with any degree of certainty how the provisions of LB 68 would be treated by the courts.
In 1916 the United States Supreme Court in Hutchinson Ice Cream Company v. Iowa, 242 U.S. 153, upheld Pennsylvania and Iowa laws establishing minimum butter-fat levels for ice cream on the ground that the states police power authorized the enactment of laws to protect consumers from fraud and deception, but did not reach the issue of whether states could prohibit altogether the sale of dairy products containing less than the prescribed minimums.
This and a number of other cases prior to the establishment of federal standards for milk and ice cream made it fairly clear that the state police power was regarded as adequate to authorize the establishment of minimum non-fat or butter-fat levels for particular products and these standards were upheld if they did not prohibit the sale of products containing less than the prescribed minimums, but instead required adequate labeling to distinguish such less expensive products from the identified products (such as ice cream or milk) for which the minimums had been established.
After the federal government established a standard for ice cream, prescribing a 10 percent minimum butter-fat level, Iowa prescribed a minimum of 12 percent. In a challenge before a three-judge federal district court, the court did not resolve the issue of whether a state standard higher than the federal would constitute an excessive burden on Interstate Commerce because the court felt there was insufficient evidence before the court to decide the issue. Borden Company v. Liddy, 239 F. Supp. 289 (S.D. Iowa 1965).
Since 1935 there have been a number of cases in which the U.S. Supreme Court has invalidated various local milk regulations on the ground that they excessively burden the Interstate Commerce.
In Baldwin v. G.A.F. Seelig, Inc., 294 U.S. 511 (1935), the court struck down a New York statute that prohibited the sale of milk bought outside the state unless the price paid to producers was one that would be lawful upon a like transaction within the state; in H. P. Hood and Sons, Inc. v. DuMond, 336 U.S. 527 (1949) the court invalidated a New York law limiting the right of out-of-state milk processors to operate within the state, on the ground that its purpose was to protect local commercial interests; in Dean Milk Company v. Madison, 340 U.S. 349 (1951) the court held that a city ordinance requiring that milk be pasteurized within five miles of the city went beyond what was necessary to assure the wholesomeness of milk sold an imposed an undue burden on Interstate Commerce; in Polar Ice Cream and Creamery Company v. Andrews, 375 U.S. 361 (1964), the court invalidated a Florida law requiring Florida processors to purchase all milk offered by Florida producers before they could purchase milk from out-of-state producers; and in Greater A P Tea Company v. Cottrell, 424 U.S. 366 (1976), the court held that an excessive burden on Interstate Commerce was imposed by a Mississippi law which provided that milk from another state could be sold in Mississippi only if the regulatory agency of the other state accepted milk purchased in Mississippi on a reciprocal basis.
In a case before the Wisconsin Supreme Court, Coffee Rich, Inc. v. Wisconsin Department of Agriculture, 70 Wis.2d 265,234 N.W.2d 270 (1975) the court held that although a state law prohibiting the sale of non-dairy coffee whiteners was a legitimate exercise of the state police power to prevent fraud and deception, the law was nevertheless invalid since it placed an excessive burden on Interstate Commerce in relation to the local benefits to consumers.
In a more recent non-dairy product case the Supreme Court of the United States struck down an Iowa law which prohibited the use of 65 foot double trailer trucks on its highways. In Kassel v. Consolidated Freightways Corp.,450 U.S. 662 (1981), the court found that the Iowa law, which was more stringent than those of all other states in the west or midwest, imposed an unreasonable burden on Interstate Commerce in relation to the purported public health and safety benefits which the state cited as justifying its enactment.
These decision involving regulations affecting Interstate Commerce provide considerable guidance in seeking to determine the validity of legislation attempting to establish minimum levels for non-fat milk solids in excess of those prescribed by the federal standards, and although none of these cases directly address state non-fat or milk-fat standards that are higher than the levels prescribed under federal laws, the opinions seem to make clear that the court will carefully scrutinize local regulations which may reduce the flow of Interstate milk into the state in order to determine whether such regulations are intended to achieve a legitimate constitutional purpose, or whether the purpose is merely to advance the economic interests of milk producers within the state.
Another matter which we believe must be considered is the fact that it appears that the state has adhered to the 8.25 percent minimum federal level for many years and that might militate against a conclusion that the higher 8.7 percent was necessary to prevent deception of consumers. The long adherence of the federal government and most other states to the 8.25 percent level might suggest that that level of milk solids is consistent with the expectation and understanding of consumers.
It is therefore our conclusion that although we cannot say that LB 68 is or is not, as a matter of law, in violation of the Commerce clause of the United States Constitution, we believe that in an action challenging the validity of LB 68, if the opponents of the legislation were able to show that the dominant purpose of raising the MSNF level from the federal 8.25 percent level to 8.27 percent was that of increasing the sale of milk solids within the state and promoting the economic well-being of producers within the state at the expense of producers in other states, considering the fact that the state has adhered to the federal 8.25 percent level for many years, defense of the increase in MSNF level on the grounds that the purpose of the bill was to protect the health, safety or welfare of consumers within the state might be very difficult.
Very truly yours,
ROBERT M. SPIRE Attorney General
Bernard L. Packett Assistant Attorney General