IN RE REFERRAL OF LOWER PLATTE
SOUTH NATURAL RESOURCES DISTRICT.
DONALD CHADD, APPELLANT, V. LOWER PLATTE SOUTH NATURAL
RESOURCES DISTRICT AND CARL GODWIN, APPELLEES.

621 N.W.2d 299

Filed January 19, 2001. No. S-00-439.

Stephen D. Mossman, of Mattson, Ricketts, Davies, Stewart & Calkins, for appellant Donald Chadd.

Lee W. Orton, of Orton, Thomas & O'Connell, for appellee Carl Godwin.

Steven G. Seglin, of Crosby, Guenzel, Davis, Kessner & Kuester, for appellee Lower Platte South Natural Resources District.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## INTRODUCTION

Donald Chadd filed a written objection, under Neb. Rev. Stat. § 46-691 (Cum. Supp. 2000), with the Lower Platte South Natural Resources District (NRD) regarding the withdrawal and transfer of ground water from his property. The water was being transferred away from the overlying land to a neighbor's property and was being utilized for domestic purposes. Pursuant to the procedures in § 46-691, the NRD requested that the Nebraska Department of Water Resources (Department), now the Department of Natural Resources, hold a hearing to determine whether the transfer of water had a significant adverse effect upon Chadd. The issue to be decided in this appeal is whether the Department, under § 46-691, has jurisdiction over the withdrawal and transfer of ground water off overlying land for domestic purposes when the transfer is not part of an Environmental Protection Act remediation plan. The Department concluded that under the plain language of

§ 46-691, it did not have the authority to hear Chadd's claim. We agree and dismiss Chadd's appeal for lack of jurisdiction.

## FACTUAL BACKGROUND

On January 21, 1999, Chadd filed a written objection with the NRD under § 46-691 regarding the withdrawal and transfer of ground water from his property. The water was being transferred from Chadd's property to Carl Godwin's property where it was used solely for domestic purposes. The withdrawal and transfer of the water was done via a well, owned by Godwin, located on Chadd's property. Godwin had a legal easement for the well and waterline to his property from Chadd's property. The validity of the easement was judicially determined in prior litigation involving Chadd and Godwin and is not at issue here. Chadd claims that after 4 to 6 hours of Godwin's use of his well, Chadd's well would go dry. The parties have stipulated that Godwin's use of the water was for domestic purposes only and was neither for agricultural purposes nor pursuant to a ground water remediation plan as required by the Environmental Protection Act, including providing water for domestic purposes under such a ground water remediation plan. The Department eventually found that under previous rulings by the Department, Godwin's transfer was a transfer off the overlying land. Pursuant to the procedures contained in § 46-691, because the NRD could not determine whether the water transfer significantly adversely affected another water user, it requested that the Department hold a hearing to decide the issue.

On July 19, 1999, Godwin moved for dismissal of the proceedings in the Department for lack of jurisdiction or authority. The Department initially determined that it had jurisdiction under § 46-691 and denied Godwin's motion to dismiss on October 20. The case proceeded to an administrative hearing on January 20, 2000, where evidence was heard as to the effects of the Godwin well on the Chadd well and where Godwin renewed his motion to dismiss for lack of jurisdiction under § 46-691. On March 31, the Department determined that the evidence and stipulations clearly showed that Godwin's use of the water was for domestic purposes and not pursuant to a remediation plan. The Department determined that it did not have authority to hear

Chadd's claim because § 46-691 does not apply to transfers for domestic purposes, except when part of a remediation plan as required under the Environmental Protection Act. The Department therefore dismissed the case for lack of jurisdiction, and it is from this order that Chadd appeals.

## ASSIGNMENTS OF ERROR

Chadd assigns that the Department erred in (1) determining that § 46-691 does not apply to domestic ground transfers except when part of a remediation project under the Environmental Protection Act, (2) granting Godwin's motion to dismiss, (3) failing to address whether Nebraska common law prohibits the transfer of ground water for domestic purposes, (4) failing to find that Chadd had been adversely impacted by Godwin's well, and (5) failing to enjoin Godwin from withdrawing and transferring ground water from Chadd's property.

## STANDARD OF REVIEW

■ On questions of law, which include the meaning of statutes, a reviewing court is obligated to reach its conclusions independent of the legal determinations made by the director of the Department of Water Resources. *Central Platte NRD v. City of Fremont*, 250 Neb. 252, 549 N.W.2d 112 (1996).

## ANALYSIS

We first address whether the Department was correct in its determination that it lacked authority to hear this case because § 46-691 does not apply to domestic transfer cases, unless part of a remediation plan as required by the Environmental Protection Act. Chadd asserts that § 46-691 expands the Department's jurisdiction beyond situations where the ground water transfer is for agricultural purposes or pursuant to a remediation plan.

■ In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, as it is the court's duty to discover, if possible, the Legislature's intent from the language of the statute itself. *Abboud v. Papio-Missouri River NRD*, 253 Neb. 514, 571 N.W.2d 302 (1997); *Brown v.*

*Wilson*, 252 Neb. 782, 567 N.W.2d 124 (1997). In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Hollandsworth v. Nebraska Partners*, 260 Neb. 756, 619 N.W.2d 579 (2000); *Vopalka v. Abraham*, 260 Neb. 737, 619 N.W.2d 594 (2000).

■ At the outset, we find it helpful to engage in a brief discussion of Nebraska's common law regarding the transfer of water off overlying land as such discussion will give some background relative to the Legislature's intent when it enacted § 46-691 in 1995. Nebraska's common law does not allow water to be transferred off overlying land. *Ponderosa Ridge LLC v. Banner County*, 250 Neb. 944, 554 N.W.2d 151 (1996); *Sorensen v. Lower Niobrara Nat. Resources Dist.*, 221 Neb. 180, 376 N.W.2d 539 (1985); *State ex rel. Douglas v. Sporhase*, 208 Neb. 703, 305 N.W.2d 614 (1981), *reversed on other grounds* 458 U.S. 941, 102 S. Ct. 3456, 73 L. Ed. 2d 1254 (1982); *Olson v. City of Wahoo*, 124 Neb. 802, 248 N.W. 304 (1933). However, we have made it clear that the Legislature may provide exceptions to this common-law rule. In *State ex rel. Douglas v. Sporhase*, 208 Neb. at 706-07, 305 N.W.2d at 617, we stated:

> Since the Nebraska common law of ground water permitted use of the water only on the overlying land, legislative action was necessary to allow for transfers off the overlying land, even for as pressing a need as supplying urban water users.
>
> . . . [T]he Legislature has the power to determine public policy with regard to ground water and . . . it may be transferred from the overlying land only with the consent of and to the extent prescribed by the public through its elected representatives.

Similarly, in *Sorensen v. Lower Niobrara Nat. Resources Dist.*, 221 Neb. at 190, 376 N.W.2d at 547, we observed:

> By enacting the Municipal and Rural Domestic Ground Water Transfers Permit Act as a part of Nebraska's policy, the Legislature altered certain aspects of common law governing use of ground water. Permittees under the act are exonerated from the common-law prohibition against transfer and transportation of ground water.

Finally, in *Ponderosa Ridge LLC v. Banner County*, 250 Neb. at 962, 554 N.W.2d at 163, we said that "the transportation of Nebraska ground water from the underlying land for any use, interstate or intrastate, is severely curtailed. The transportation of ground water for intrastate use is prohibited except for specific statutory exceptions." See, also, *Springer v. Kuhns*, 6 Neb. App. 115, 571 N.W.2d 323 (1997) (for thorough discussion of ground water law and intent of Legislature in enacting § 46-691).

With the general rule that the Legislature may provide exceptions to the common-law prohibition of the transfer of ground water off the overlying land in mind, we now turn to the statute in question. Section 46-691 states, in relevant part:

(1) Any person who withdraws ground water for agricultural purposes, or for any purpose pursuant to a ground water remediation plan as required under the Environmental Protection Act, including the providing of water for domestic purposes, from aquifers located within the State of Nebraska may transfer the use of the ground water off the overlying land if the ground water is put to a reasonable and beneficial use within the State of Nebraska and is used for an agricultural purpose, or for any purpose pursuant to a ground water remediation plan as required under the Environmental Protection Act, including the providing of water for domestic purposes, after transfer, and if such withdrawal, transfer, and use (a) will not significantly adversely affect any other water user, (b) is consistent with all applicable statutes and rules and regulations, and (c) is in the public interest. . . .

(2) Any affected party may object to the transfer of ground water by filing written objections, specifically stating the grounds for such objection, in the office of the natural resources district containing the land from which the ground water is withdrawn. Upon the filing of such objections or on its own initiative, the natural resources district shall conduct a preliminary investigation to determine if the withdrawal, transfer, and use of ground water is consistent with the requirements of subsection (1) of this section. Following the preliminary investigation, if the district

has reason to believe that the withdrawal, transfer, or use may not comply with any rule or regulation of the district, it may utilize its authority under the Nebraska Ground Water Management and Protection Act to prohibit such withdrawal, transfer, or use. If the district has reason to believe that the withdrawal, transfer, and use is consistent with all rules and regulations of the district but may not comply with one or more other requirements of subsection (1) of this section, the district shall request that the Department of Natural Resources hold a hearing on such transfer.

The Legislature's obvious purpose in enacting § 46-691 was to carve out two exceptions from Nebraska's common-law prohibition against transfers of water off overlying land: (1) for agricultural purposes and (2) pursuant to a remediation plan under the Environmental Protection Act. When § 46-691 is read in conjunction with our statement in *State ex rel. Douglas v. Sporhase*, 208 Neb. 703, 706, 305 N.W.2d 614, 617 (1981), that "legislative action [is] necessary to allow for transfers off the overlying land," it is clear that the Legislature intended to specifically allow for the transfer of ground water "for agricultural purposes, or for any purpose pursuant to a ground water remediation plan as required under the Environmental Protection Act, . . . off the overlying land if the ground water is put to a reasonable and beneficial use within the State of Nebraska," § 46-691(1). Subsection (1) is narrow in scope as it provides only two exceptions to the common-law rule.

With the knowledge that the Legislature intended to create two exceptions to the common-law prohibition against transfers of water off overlying land, we now turn to the issue at bar. Chadd urges us to interpret § 46-691 as allowing the Department to hear cases that do not involve transfers of water either for agricultural purposes or pursuant to a remediation plan as required under the Environmental Protection Act. He effectively asserts that § 46-691(2) expands the Department's jurisdiction to hear all cases involving transfers of water, regardless of whether they are for an agricultural purpose or are pursuant to a remediation plan as required under the Environmental Protection Act. Chadd bases his assertion on the language in subsection (2) which states that

"[a]ny affected party may object to the transfer of ground water by filing written objections" as well as the subsection (2) requirement that transfers of water be consistent with the requirements of subsection (1). Chadd appears to read this language independent of the context of the statute and without the common-law and legislative intent in mind. We disagree with the meaning that Chadd ascribes to § 46-691. In reading a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *American Employers Group v. Department of Labor*, 260 Neb. 405, 617 N.W.2d 808 (2000). The language of § 46-691 is plain and unambiguous; it is not necessary to "interpret" the statutory language in the instant case.

The first sentence of § 46-691(2) means that only parties who are affected by the transfer of ground water off overlying land for agricultural purposes or pursuant to a water remediation plan, as required under the Environmental Protection Act, may object to such transfer by the procedures outlined in § 46-691(2). In other words, the only parties who may avail themselves of the process for objecting under § 46-691(2) are those who are affected by a transfer of water which is for an agricultural purpose or is pursuant to a remediation plan as required by the Environmental Protection Act.

The second sentence of § 46-691(2) means that a resources district shall conduct an investigation to determine whether the transfer of water complained of by the objector, which objectionable transfer must be for agricultural purposes or pursuant to a water remediation plan as required under the Environmental Protection Act, is consistent with the requirements of § 46-691(1) that the transfer "(a) will not significantly adversely affect any other water user, (b) is consistent with all applicable statutes and rules and regulations, and (c) is in the public interest." The plain language is consistent with the legislative purpose in enacting § 46-691—to carve out two exceptions to the common-law prohibition against transfers of water off overlying land.

We conclude that the Department was correct in its determination that it did not have jurisdiction to hear this case under

§ 46-691. To hold otherwise would not only ignore the Legislature's proper role of altering certain aspects of the common law governing ground water use, but would also vitiate the Legislature's intent in enacting § 46-691. Thus, § 46-691 is limited in procedural scope to claims where a party is affected by the transfer of water for agricultural use or pursuant to a remediation plan as required by the Environmental Protection Act. Because Chadd filed his objection with the NRD pursuant to § 46-691 in a situation where the transfer objected to was concededly a domestic transfer not pursuant to a remediation plan, the NRD did not have proper statutory authority to investigate the claim. Moreover, the Department did not have jurisdiction to hear the claim under the procedural provisions of § 46-691.

## CONCLUSION

Because the procedural provisions of § 46-691 do not give the Department jurisdiction to settle disputes where the transfer of water is not for agricultural purposes or pursuant to a remediation plan as required by the Environmental Protection Act, the Department properly dismissed the case for lack of jurisdiction. We consequently lack jurisdiction and dismiss Chadd's appeal.

APPEAL DISMISSED.