Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/30/2017 09:12 AM CDT

J. Daniel Estermann, appellant, v. Bill Bose et al.,
board members of Nebraska Cooperative Republican
Platte Enhancement Project, a political subdivision
of the State of Nebraska, and Nebraska
Cooperative Republican Platte Enhancement
Project, a political subdivision of the
State of Nebraska, appellees.

___ N.W.2d ___

Filed April 7, 2017.    No. S-15-1022.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

4. **Pleadings: Appeal and Error.** An appellate court reviews a district court's denial of a motion for leave to amend a complaint for an abuse of discretion. However, an appellate court reviews de novo an underlying legal conclusion that the proposed amendments would be futile.

5. **Summary Judgment.** On a motion for summary judgment, the question is not how the factual issue is to be decided but whether any real issue of material fact exists.

6. **Summary Judgment: Proof.** A party moving for summary judgment makes a prima facie case for summary judgment by producing enough

evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial.

7. ____: ____. Once the moving party makes a prima facie case, the burden shifts to the party opposing the motion to produce admissible contradictory evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.

8. **Constitutional Law: Eminent Domain: Taxation: Public Purpose.** A citizen's property may not be taken against his or her will, except through the sovereign powers of taxation and eminent domain, both of which must be for a public purpose.

9. **Eminent Domain: Public Purpose: Words and Phrases.** Eminent domain is the State's inherent power to take private property for a public use.

10. **Constitutional Law: Eminent Domain: Legislature: Statutes.** The State's eminent domain power resides in the Legislature and exists independently of the Nebraska Constitution. But the constitution has limited the power of eminent domain, and the Legislature can limit its use further through statutory enactments.

11. **Constitutional Law: Eminent Domain: Public Purpose.** Under Neb. Const. art. I, § 21, the State can take private property only for a public use and only if it pays just compensation.

12. **Eminent Domain: Legislature.** Only the Legislature can authorize a private or public entity to exercise the State's power of eminent domain.

13. **Pleadings.** A district court's denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the nonmoving party can be demonstrated.

14. **Pleadings: Summary Judgment: Proof.** After discovery is closed and a motion for summary judgment has been filed, the appropriate standard for assessing whether a motion to amend should be determined futile is that the proposed amendment must be not only theoretically viable but also solidly grounded in the record and supported by substantial evidence sufficient to give rise to a triable issue of fact.

15. **Legislature: Waters.** Nebraska's common law does not allow water to be transferred off overlying land. But the Legislature may provide exceptions to this common-law rule.

Appeal from the District Court for Lincoln County: Richard A. Birch, Judge. Affirmed.

Amy M. Svoboda, of Svoboda Law Office, and George G. Vinton for appellant.

Donald G. Blankenau and Vanessa A. Silke, of Blankenau, Wilmoth & Jarecke, L.L.P., for appellees.

Douglas J. Peterson, Attorney General, Justin D. Lavene, and Kathleen A. Miller, for amicus curiae Nebraska Attorney General.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Miller-Lerman, J.

## NATURE OF CASE

In this case, J. Daniel Estermann, the appellant, filed a complaint for injunction in the district court for Lincoln County against Bill Bose, Brad Randel, Jerry Weaver, and Terry Martin, who are board members of the Nebraska Cooperative Republican Platte Enhancement (N-CORPE) project, a political subdivision of the State of Nebraska, and N-CORPE (collectively the appellees), along with other parties who were later dismissed. Estermann filed this complaint in response to N-CORPE's separate condemnation proceedings against Estermann pending in the county court for Lincoln County, in which N-CORPE sought an easement across Estermann's real estate. Early on in this case, Estermann additionally filed an application for a temporary restraining order and a motion for temporary injunction, both of which the district court denied. The appellees subsequently filed a motion for summary judgment. After a hearing, the district court granted the appellees' motion for summary judgment and dismissed Estermann's complaint. Estermann appeals. We affirm; however, to some extent, our reasoning differs from that of the district court.

## STATEMENT OF FACTS

N-CORPE is a political subdivision of the State of Nebraska that was created under the Interlocal Cooperation Act (ICA), Neb. Rev. Stat. § 13-801 et seq. (Reissue 2012), by four natural resources districts: the Upper Republican, the Middle Republican, the Lower Republican, and the Twin Platte.

Each natural resources district (hereinafter NRD) is a political subdivision of Nebraska. The four NRD's entered into an amended agreement in December 2013, which created N-CORPE. The amended agreement states that "N-CORPE shall constitute a separate body corporate and politic of the State of Nebraska exercising public powers and acting on behalf of the Parties hereto." According to the amended agreement, the purpose of N-CORPE is to regulate and manage water to assist the State with compliance with the Republican River Compact (Compact). Nebraska, Kansas, Colorado, and the United States of America are parties to the Compact, and the Republican River Basin has been the subject of the Compact since 1943.

In *Kansas v. Nebraska*, ___ U.S. ___, 135 S. Ct. 1042, 1049, 191 L. Ed. 2d 1 (2015), the U.S. Supreme Court described the Compact by stating:

The Compact apportions among the three States "the virgin water supply originating in" . . . the Republican River Basin. . . . "Virgin water supply," as used in the Compact, means "the water supply within the Basin," in both the River and its tributaries, "undepleted by the activities of man." Compact Art. II. The Compact gives each State a set share of that supply—roughly, 49% to Nebraska, 40% to Kansas, and 11% to Colorado—for any "beneficial consumptive use." *Id*., Art. IV; see Art. II (defining that term to mean "that use by which the water supply of the Basin is consumed through the activities of man"). In addition, the Compact charges the chief water official of each State with responsibility to jointly administer the agreement. See *id*., Art. IX. Pursuant to that provision, the States created the Republican River Compact Administration (RRCA). The RRCA's chief task is to calculate the Basin's annual virgin water supply by measuring stream flow throughout the area, and to determine (retrospectively) whether each State's use of that water has stayed within its allocation.

In 2002, the Compact was modified via a "Final Settlement Stipulation" (FSS), which was approved by the U.S. Supreme Court in *Kansas v. Nebraska, supra*.

In furtherance of its purpose to assist the State with compliance with the compact, the amended agreement creating N-CORPE states that N-CORPE's business is to be conducted by a board and that each of the NRD's is to have a member on the board. The amended agreement provides that "N-CORPE shall have all the powers, privileges and authority exercised or capable of being exercised by each of the individual and separate Parties [NRD's] to achieve the purposes of the N-CORPE as set forth in this Agreement and as may be otherwise provided for in the [ICA]."

In the condemnation case, Lincoln County Court case No. CI 14-496, N-CORPE filed an amended petition to condemn in March 2014. N-CORPE stated in its amended petition that it was developing a "stream flow augmentation project" in Lincoln County in order to manage ground water and surface water in the Republican River Basin and to comply with the Compact. N-CORPE alleged in its amended petition that its project and petition were in response to the claim of the State of Kansas that it was not receiving its share of the Republican River water that was due to it under the Compact. N-CORPE stated in its amended petition that a portion of the water augmentation project was located over Estermann's real estate in Lincoln County and that therefore, N-CORPE was seeking a permanent "Flowage and Right-of-Way Easement" over Estermann's real estate in order to augment waterflow into Medicine Creek, which is a tributary of the Republican River.

After N-CORPE filed its amended petition to condemn, on April 1, 2014, Estermann filed the complaint in this case seeking an injunction against the appellees and Jeffrey Bain, Kent Florom, and Michael Nozicka. The latter three defendants were appraisers appointed by the county court for Lincoln County; they were subsequently dismissed as parties and are not parties to this appeal.

Estermann alleged in his complaint that as a result of N-CORPE's water augmentation project his real estate has flooded, causing increasing and irreparable damage to his land and crops, and that the floodwaters are creating new creek channels and are threatening to lower the water table under his fields. Estermann alleged that N-CORPE does not have the power of eminent domain, because "the [L]egislature has not delegated such powers to interlocal agencies under the [ICA]" and because the NRD's do not have the authority to delegate to N-CORPE any eminent domain powers they may hold. Estermann further alleged in his complaint that (1) the condemnation is not for a public use; (2) the amount of real estate being condemned is excessive in duration and area; (3) means other than an eminent domain action are available to the parties; (4) N-CORPE failed to obtain approvals and permits from certain agencies, including the Lincoln County Board of Commissioners, the Middle Republican NRD, the Twin Platte NRD, and the Nebraska Department of Natural Resources (DNR); (5) N-CORPE failed to obtain approval of the water augmentation project from Kansas; and (6) N-CORPE is prohibited under Nebraska's common law from transferring ground water off overlying land, and N-CORPE does not fall under any of the statutory exceptions to the common law. Therefore, Estermann requested that N-CORPE be enjoined from proceeding with the condemnation proceedings in case No. CI 14-496 and that N-CORPE be enjoined from discharging water into Medicine Creek.

On the day Estermann filed his complaint for injunction, Estermann also filed an application in which he sought a temporary restraining order enjoining N-CORPE from proceeding with the eminent domain action and enjoining N-CORPE from discharging water into Medicine Creek. Two days later, on April 3, 2014, the district court filed an order in which it denied Estermann's application for a temporary restraining order. In denying the application, the district court stated that "the failure to grant a temporary restraining order will not

impair [Estermann's] ability to proceed on his Complaint for an Injunction."

On April 16, 2014, Estermann filed a motion for temporary injunction that would enjoin N-CORPE from discharging water into Medicine Creek. Estermann alleged that the discharge of water into Medicine Creek during the pendency of the action would produce great irreparable injury to him. Estermann further alleged that N-CORPE does not have the power of eminent domain and therefore is not entitled to condemn an easement over his real estate. Estermann also alleged that he did not have an adequate remedy at law.

On April 30, 2014, the office of the Attorney General filed a motion for leave to file an amicus brief, in which it stated that it sought to offer guidance regarding an opinion that was issued by the Attorney General and its impact on the court's interpretation of § 13-804 of the ICA, which generally deals with public agencies exercising joint power. See Att'y Gen. Op. No. 03026 (Dec. 5, 2003). The district court granted the motion.

On May 15, 2014, the district court filed an order in which it denied Estermann's motion for temporary injunction. In the May 15 order, the district court determined that Estermann did not establish that he had a clear right to the relief he sought or that he would suffer a great or irreparable injury during the pendency of the litigation. The district court stated that Estermann's main argument in support of his request for a temporary injunction was that the NRD's that created N-CORPE cannot authorize N-CORPE to exercise the power of eminent domain. The district court rejected this argument.

In its order, the court noted that N-CORPE was created by the four NRD's pursuant to the ICA. The court recognized that pursuant to Neb. Rev. Stat. § 2-3234 (Reissue 2012), each of the NRD's has the power of eminent domain. Relying on § 13-804 of the ICA, the court further recognized that the NRD's can authorize N-CORPE to exercise any of their powers or authority, including the power of eminent domain. Section 13-804(1) provides:

> Any power or powers, privileges, or authority exercised
> or capable of exercise by a public agency of this state
> may be exercised and enjoyed jointly with any other
> public agency of this state and jointly with any public
> agency of any other state or of the United States to the
> extent that laws of such other state or of the United
> States permit such joint exercise or enjoyment. Any
> agency of state government when acting jointly with any
> public agency may exercise and enjoy all of the powers,
> privileges, and authority conferred by the [ICA] upon a
> public agency.

The district court noted in its May 15, 2014, order that
although the evidence showed that Estermann would sustain
damages from the water augmentation project, the evidence
did not support a conclusion that he would "suffer a great
or irreparable injury" before his complaint could be heard.
Accordingly, the district court denied Estermann's motion for
temporary injunction.

On June 5, 2015, the appellees filed a motion for summary
judgment. On July 17, Estermann filed a motion for leave
to file an amended complaint, in which he proposed to add
a claim that the acts of N-CORPE were improper because
N-CORPE had not obtained approval from the Republican
River Compact Administration (RRCA) for the water augmen-
tation project.

On October 2, 2015, the district court filed an order
regarding the appellees' motion for summary judgment and
Estermann's motion for leave to file an amended complaint.
The district court first denied Estermann's motion for leave to
file an amended complaint, stating that "any issues raised in
the Amended Complaint can be dealt with under the original
complaint. As such, the amendment is futile and the Motion for
Leave to Amend Complaint is therefore overruled."

The district court observed that Estermann disagreed with
the policies that led to N-CORPE's petitioning to condemn
and acquire an easement across his property. The district court

stated that "[t]hose public policy decisions are constitutionally entrusted to other branches of government."

The district court next rejected Estermann's argument that the condemnation does not meet a public purpose. The district court stated that "complying with Nebraska's obligation . . . under an interstate compact is certainly a public purpose." The court stated that the burden placed on Estermann by the condemnation does not eliminate the public purpose of the condemnation.

The district court further stated in its October 2, 2015, order that in its previous order filed May 15, 2014, the court had concluded that the NRD's had properly authorized N-CORPE to exercise the power of eminent domain. The district court stated that it believed that decision was correct and concluded that it "again holds that each of the four [NRD's] that formed N-CORPE has the power of eminent domain [and] that such authority . . . was properly exercised by N-CORPE."

The district court then rejected Estermann's argument that even if N-CORPE had the authority to condemn the easement, it did not have the authority to transport water across his property within the easement area. With respect to Estermann's contention that the common law prohibits N-CORPE from transferring ground water off the property on which it was pumped, the district court recognized that we stated in *In re Referral of Lower Platte South NRD*, 261 Neb. 90, 94, 621 N.W.2d 299, 303 (2001), that "Nebraska's common law does not allow water to be transferred off overlying land." The district court stated, however, that we went on to state that "'[t]he Legislature has the power to determine public policy with regard to ground water and . . . it may be transferred from the overlying land only with the consent of and to the extent prescribed by the public through its elected representatives.'" *Id.*, quoting *State ex rel. Douglas v. Sporhase*, 208 Neb. 703, 305 N.W.2d 614 (1981), *reversed on other grounds* 458 U.S. 941, 102 S. Ct. 3456, 73 L. Ed. 2d 1254 (1982). The district court concluded that by enacting statutes "relating to" NRD's,

the Legislature modified the common law and removed any common-law prohibition against N-CORPE's transfer of water off the overlying property.

With respect to Estermann's argument that N-CORPE does not have the necessary permits from the DNR to operate the water augmentation project, the district court determined that even though Estermann had standing to challenge the taking of the easement, he did not have standing to challenge whether N-CORPE has the permits needed to use the easement. The district court further stated that even if Estermann had standing, he was not in the appropriate forum to raise that issue.

Based upon the foregoing, the district court determined that there were no material issues of fact in dispute, and it determined that the appellees were entitled to judgment as a matter of law. The district court granted the appellees' motion for summary judgment and dismissed Estermann's complaint with prejudice.

Estermann appeals.

## ASSIGNMENTS OF ERROR

Estermann claims, restated, that the district court erred when it (1) determined that N-CORPE has authority to exercise the power of eminent domain, (2) failed to determine that certain permits and approvals had to be obtained and set forth in writing before N-CORPE could proceed in eminent domain, (3) determined that Estermann did not have standing to challenge whether N-CORPE lacked required permits and authority, (4) determined that Estermann was not in the appropriate forum to contest N-CORPE's lack of certain permits and approvals, (5) failed to determine that the county court did not have jurisdiction over N-CORPE's amended petition to condemn, (6) denied Estermann's motion for leave to amend his complaint for injunction, (7) determined that Nebraska common law does not prohibit N-CORPE from removing ground water from overlying land, and (8) failed to find there were

material issues of fact as to whether N-CORPE's condemnation action was for a public use.

## STANDARDS OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Bixenmann v. Dickinson Land Surveyors*, 294 Neb. 407, 882 N.W.2d 910 (2016), *modified on denial of rehearing* 295 Neb. 40, 886 N.W.2d 277. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

[3] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Hargesheimer v. Gale*, 294 Neb. 123, 881 N.W.2d 589 (2016).

[4] We review a district court's denial of a motion for leave to amend a complaint for an abuse of discretion. See *Bailey v. First Nat. Bank of Chadron*, 16 Neb. App. 153, 741 N.W.2d 184 (2007). See, also, *Gonzalez v. Union Pacific RR. Co.*, 282 Neb. 47, 803 N.W.2d 424 (2011). However, as we explain in greater detail later in this opinion, we review de novo an underlying legal conclusion that the proposed amendments would be futile. *Bailey v. First Nat. Bank of Chadron, supra*.

## ANALYSIS

Estermann generally claims that the district court erred when it granted the appellees' motion for summary judgment. We address Estermann's specific assignments of error below. Because we find no merit to any of Estermann's assignments of error, we affirm the decision of the district court.

[5] The principles regarding summary judgment are well established. On a motion for summary judgment, the question

is not how the factual issue is to be decided but whether any real issue of material fact exists. *Cisneros v. Graham*, 294 Neb. 83, 881 N.W.2d 878 (2016). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Strode v. City of Ashland*, 295 Neb. 44, 886 N.W.2d 293 (2016). Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id*.

[6,7] A party moving for summary judgment makes a prima facie case for summary judgment by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. *Cisneros v. Graham, supra*. Once the moving party makes a prima facie case, the burden shifts to the party opposing the motion to produce admissible contradictory evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id*.

## N-CORPE Has the Authority to
## Exercise Eminent Domain.

Estermann claims that the district court erred when it concluded that the NRD's that created N-CORPE properly authorized N-CORPE to use the power of eminent domain and that N-CORPE properly possessed authority to exercise eminent domain. Because we agree with the district court's legal conclusions, we find no merit to this assignment of error.

[8,9] As an initial matter, we first summarize the nature of eminent domain. Every citizen has the constitutional right to acquire, own, possess, and enjoy property. See Neb. Const. art. I, § 25. A citizen's property may not be taken against his or her will, except through the sovereign powers of taxation

and eminent domain, both of which must be for a public purpose. *Thompson v. Heineman*, 289 Neb. 798, 857 N.W.2d 731 (2015). See, also, *Burlington Northern Santa Fe Ry. Co. v. Chaulk*, 262 Neb. 235, 631 N.W.2d 131 (2001); *Burger v. City of Beatrice*, 181 Neb. 213, 147 N.W.2d 784 (1967). Eminent domain is the State's inherent power to take private property for a public use. *Thompson v. Heineman, supra*.

[10-12] The State's eminent domain power resides in the Legislature and exists independently of the Nebraska Constitution. *Thompson v. Heineman, supra*. But the constitution has limited the power of eminent domain, and the Legislature can limit its use further through statutory enactments. *Id*. Under Neb. Const. art. I, § 21, the State can take private property only for a public use and only if it pays just compensation. *Thompson v. Heineman, supra*. See, also, *Burlington Northern Santa Fe Ry. Co. v. Chaulk, supra*. Only the Legislature can authorize a private or public entity to exercise the State's power of eminent domain. *Id*.

Under § 2-3234, the Legislature has delegated the power of eminent domain to NRD's to carry out their authorized purposes. Section 2-3234 provides in part: "Except as provided in sections 2-3226.11 and 2-3234.02 to 2-3234.09, each district shall have the power and authority to exercise the power of eminent domain when necessary to carry out its authorized purposes within the limits of the district or outside its boundaries." Accordingly, the four NRD's that formed N-CORPE each had the power of eminent domain.

Pursuant to the ICA, the NRD's may exercise their authority and other powers alone or jointly with other local governmental units. Nebraska permits interlocal agreements pursuant to the ICA. *Kubicek v. City of Lincoln*, 265 Neb. 521, 658 N.W.2d 291 (2003). The ICA's purpose is "to permit local governmental units to make the most efficient use of their taxing authority and other powers by enabling them to cooperate with other localities on a basis of mutual advantage and thereby to provide services and facilities." See § 13-802.

Under § 13-804(2), two or more public agencies may enter into agreements with one another for joint or cooperative action under the ICA. See *City of Falls City v. Nebraska Mun. Power Pool*, 279 Neb. 238, 777 N.W.2d 327 (2010). The ICA authorizes the creation of a joint entity whose express authority is limited to executing the enumerated powers of the agencies which created it. Section 13-803(1) of the ICA provides that for purposes of the ICA, "[j]oint entity shall mean an entity created by agreement pursuant to section 13-804." As quoted earlier in this opinion, with respect to joint entities, § 13-804(1) provides:

Any power or powers, privileges, or authority exercised or capable of exercise by a public agency of this state may be exercised and enjoyed jointly with any other public agency of this state and jointly with any public agency of any other state or of the United States to the extent that laws of such other state or of the United States permit such joint exercise or enjoyment. Any agency of state government when acting jointly with any public agency may exercise and enjoy all of the powers, privileges, and authority conferred by the [ICA] upon a public agency.

Section 13-804(2) provides:

Any two or more public agencies may enter into agreements with one another for joint or cooperative action pursuant to the [ICA]. Appropriate action by ordinance, resolution, or otherwise pursuant to law of the governing bodies of the participating public agencies shall be necessary before any such agreement may enter into force.

With respect to how the ICA is to be construed, § 13-825 provides:

The provisions of the [ICA] shall be deemed to provide an additional, alternative, and complete method for the doing of the things authorized by the act and shall be deemed and construed to be supplemental and additional to, and not in derogation of, powers conferred

upon political subdivisions, agencies, and others by law.
Insofar as the provisions of the [ICA] are inconsistent
with the provisions of any general or special law, admin-
istrative order, or regulation, the provisions of the [ICA]
shall be controlling.

Estermann claims that the district court erred when it deter-
mined that N-CORPE had the authority to exercise the power
of eminent domain. Estermann contends that the Legislature
did not specify in the ICA or elsewhere that an interlocal
agency created pursuant to the ICA could have the power of
eminent domain. Estermann further asserts that

the only way an interlocal agency could have condemna-
tion powers is if the Nebraska Legislature had included
language in the ICA to the effect that all agencies created
under the ICA have eminent domain power or perhaps
language to the effect that any such agency does possess
eminent domain powers so long as the government agen-
cies that created it have those powers.

Brief for appellant at 22. Estermann contends that only the
Legislature is capable of delegating eminent domain power and
that because the Legislature did not explicitly state that interlo-
cal agencies, such as N-CORPE, may have eminent domain
power, N-CORPE does not have the power to exercise eminent
domain. We disagree.

In December 2013, the four NRD's formed N-CORPE by
entering into an amended agreement pursuant to the ICA. As
stated above, pursuant to § 2-3234, the NRD's that formed
N-CORPE each had the power of eminent domain. Under
§ 13-804, local governmental units are authorized to jointly
exercise their individually held authority and powers through
a joint entity created under the ICA. Therefore, because the
NRD's that formed N-CORPE each individually held the
power of eminent domain, the NRD's were able to jointly
exercise that individually held power through the mechanism
of the joint entity they created, i.e., N-CORPE, and thus,
N-CORPE was authorized to exercise the power of eminent
domain. When the NRD's formed N-CORPE as a joint entity

under the ICA, they did not lose any of the powers, privileges, or authorities that they separately held, including the power of eminent domain. Instead, the powers, privileges, and authorities that the NRD's were capable of exercising separately could be exercised and enjoyed jointly with the other NRD's through the mechanism of their joint entity, N-CORPE. See § 13-804(1).

The foregoing description of the N-CORPE's authority to act and the simultaneous power of eminent domain retained by the NRD's is in accord with § 13-825, which provides:

> The provisions of the [ICA] shall be deemed to provide an additional, alternative, and complete method for the doing of the things authorized by the act and shall be deemed and construed to be supplemental and additional to, *and not in derogation of*, powers conferred upon political subdivisions, agencies, and others by law.

(Emphasis supplied.) Thus, under § 13-825, the formation of N-CORPE did not remove or degrade powers that the Legislature had already granted to the NRD's by statute. Rather, the formation by the NRD's of the joint entity N-CORPE under the provisions of the ICA created a method of exercising eminent domain which was "supplemental and additional to, and not in derogation of, powers" conferred on the NRD's. Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Stewart v. Nebraska Dept. of Rev.*, 294 Neb. 1010, 885 N.W.2d 723 (2016). Under the clear language of §§ 13-804 and 13-825, N-CORPE is authorized by the ICA to serve as the method to exercise the power of eminent domain to the extent that eminent domain had been conferred on the NRD's.

We have previously recognized that the authority and powers of governmental entities can be exercised and enjoyed jointly with other governmental entities through a joint entity created pursuant to the ICA. See *Kubicek v. City of Lincoln*, 265 Neb. 521, 658 N.W.2d 291 (2003). Although *Kubicek*

did not directly involve the issue of the exercise of the power of eminent domain, we find its description of a joint entity useful. In *Kubicek*, we noted that three governmental entities created a joint entity—referred to as the "joint administrative agency"—pursuant to an interlocal cooperation agreement for the purpose of completing a project. This court stated that "[b]efore the creation of [the joint agency], each partner had the statutory authority to implement certain aspects of the project. Together, through [the joint agency], the three partners have complete statutory authority to implement the whole project." *Kubicek v. City of Lincoln*, 265 Neb. at 523-24, 658 N.W.2d at 294. Accordingly, the joint entity was able to exercise the express powers and authorities that were held by the governmental agencies which created it. Similarly, in this case, N-CORPE may exercise the powers and authorities that were held individually by the four NRD's that created it pursuant to the ICA, namely the power of eminent domain.

For these reasons, we determine that the district court did not err when it concluded that N-CORPE had the authority to exercise the power of eminent domain. We find no merit to this assignment of error.

*N-CORPE Did Not Lack Necessary*
*Permits or Approvals.*

Estermann claims that the district court erred when it failed to determine that N-CORPE was required to obtain permits and approvals from the DNR and the NRD's in order to implement and operate the N-CORPE project and to utilize the easement over Estermann's property. We find no merit to this assignment of error.

Neb. Rev. Stat. § 76-704 (Reissue 2009) provides: "If any condemnee shall fail to agree with the condemner with respect to the acquisition of property sought by the condemner, a petition to condemn the property may be filed by the condemner in the county court of the county where the property or some part thereof is situated." Estermann claims that N-CORPE failed to comply with Neb. Rev. Stat. § 76-704.01(7) (Reissue 2009),

which provides that if approval of another agency is required, "[a] petition filed pursuant to section 76-704, shall . . . set forth the approval in writing of such agency." Estermann asserts that N-CORPE failed to obtain such approvals as required by § 76-704.01 and set forth said approvals in its petition to condemn.

We note that the district court determined that Estermann does not have standing to challenge whether N-CORPE has the permits needed to use the easement and that even if Estermann did have standing, he was not in the appropriate forum within which to raise the issue. Assuming without deciding that Estermann had standing and was in the proper forum, as set forth below, we determine that N-CORPE was not required to obtain the permits and approvals alleged by Estermann. And in view of our resolution of the permits issue, we do not address Estermann's assignments of error to the effect that the district court erred when it determined that Estermann did not have standing to challenge N-CORPE's lack of permits and that he was not in the appropriate forum to raise the issue. See *In re Interest of Jackson E.*, 293 Neb. 84, 87, 875 N.W.2d 863, 866 (2016) ("[a]n appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it").

Estermann first asserts that that N-CORPE was required to obtain a permit from the DNR to conduct water into or along natural channels pursuant to Neb. Rev. Stat. § 46-252 (Reissue 2010). We will refer to this as a "conduct water permit." Section 46-252 generally provides that a conduct water permit allows a permit holder to utilize naturally occurring waterways to move a quantity of water from one point to another. A conduct water permit is required if an applicant wants the DNR to monitor and protect the quantity of water as it moves downstream. Section 46-252 provides in part:

> (1) Any person may conduct, either from outside the state or from sources located in the state, quantities of water over and above those already present into or along any of the natural streams or channels of this state, for

purposes of instream beneficial uses or withdrawal of some or all of such water for out-of-stream beneficial uses, at any point without regard to any prior appropriation of water from such stream, due allowance being made for losses in transit to be determined by the [DNR]. The [DNR] shall monitor movement of the water by measurements or other means and shall be responsible for assuring that such quantities are not subsequently diverted or withdrawn by others unless they are authorized to do so by the person conducting the water.

(2) Except as provided in subsections (3) and (4) of this section, before any person may conduct water into or along any of the natural streams or channels of the state, he or she shall first obtain a permit from the [DNR]. Application for the permit shall be made on forms provided by the [DNR]. Applications shall include plans and specifications detailing the intended times, amounts, and streamreach locations and such other information as required by the [DNR]. The water subject to such a permit shall be deemed appropriated for the use specified in the permit. Permitholders shall be liable for any damages resulting from the overflow of such stream or channel when water so conducted contributed to such overflow.

The exceptions set forth in subsections (3) and (4) of § 46-252 are not applicable to this case.

Although the N-CORPE project adds quantities of water to the stream, it does not require a conduct water permit, because unlike the scenarios described in § 46-252, N-CORPE is not attempting to guarantee that a certain quantity of water is used for a beneficial use or reaches a certain point downstream for a particular use. Rather, the purpose of the N-CORPE project is simply to add water to the Republican River Basin in order to offset water depletion.

We note that while some of the water eventually reaches Kansas, this does not mean that a conduct water permit is required. A conduct water permit provides protection for a

quantity of water as it travels along from one point to another. Estermann points to the fact that the State of Wyoming was granted a water conduct permit under § 46-252 to conduct water in the North Platte River from Wyoming's Pathfinder Reservoir to Nebraska's Kingsley Reservoir in order to comply with Wyoming's obligations under the Nebraska-Wyoming settlement agreement and the Platte River Recovery Implementation Program. Estermann contends that because Wyoming obtained a water conduct permit, one is required herein. We do not agree. According to the undisputed record, Wyoming sought the permit in order to protect the amount of water it was conducting in the North Platte River from the Wyoming-Nebraska State line for delivery to the Kingsley Reservoir in Nebraska. In contrast, in this case, N-CORPE is augmenting the flow of water into Medicine Creek to the Republican River Basin, but it is not attempting to guarantee the delivery of a specific quantity of water past the headwaters of Medicine Creek. Under the circumstances, N-CORPE does not need a conduct water permit pursuant to § 46-252.

Estermann also asserts that N-CORPE was required to obtain a permit from the DNR to transfer ground water pursuant to Neb. Rev. Stat. § 46-613.01 (Reissue 2010) in order to construct and operate the project. Pursuant to § 46-613.01, a ground water transfer permit requires that "[a]ny person, firm, city, village, municipal corporation, or other entity intending to withdraw ground water from any water well located in the State of Nebraska *and transport it for use in another state* shall apply to the [DNR] for a permit to do so." (Emphasis supplied.)

The purpose of the N-CORPE project is to increase the amount of water available in the Republican River Basin, but it is not the purpose of the N-CORPE project to transport water explicitly for use in Kansas. Because the N-CORPE project does not seek to transport water for use in another state, N-CORPE did not need to obtain a ground water transfer permit pursuant to § 46-613.01. Compare, *Sporhase v. Nebraska*

*ex rel. Douglas*, 458 U.S. 941, 102 S. Ct. 3456, 73 L. Ed. 2d 1254 (1982) (concerning applicant with contiguous tracts in Nebraska and Colorado who pumped ground water from well in Nebraska to irrigate applicant's tracts in both Nebraska and Colorado); *Ponderosa Ridge LLC v. Banner County*, 250 Neb. 944, 554 N.W.2d 151 (1996) (concerning applicant with contiguous tracts in Wyoming and Nebraska who sought ground water transfer permit to irrigate farmland in Wyoming with water from well in Nebraska).

We additionally note that our resolution of the DNR permit issues is supported by the record which shows that the DNR was fully aware of the N-CORPE project. Specifically, the record shows that the director of the DNR and the predecessor acting director of the DNR determined that N-CORPE did not require a permit under either § 46-252 or § 46-613.01.

Estermann also argues that N-CORPE was required under its respective rules and regulations to obtain permits from the Middle Republican NRD and the Twin Platte NRD before operating the N-CORPE project. The Middle Republican NRD and the Twin Platte NRD are two of the four NRD's that created the joint entity, N-CORPE, for the purposes of completing the N-CORPE project. Pursuant to the amended agreement that created N-CORPE, each of the four NRD's had a member on the board with a vote regarding the construction and operation of the N-CORPE project. During the construction and operation of the N-CORPE project, neither the Middle Republican NRD nor the Twin Platte NRD required N-CORPE to obtain a permit from these individual NRD's. We determine that by voting in favor of the N-CORPE project, the Middle Republican NRD and the Twin Platte NRD have concluded that the N-CORPE project is in compliance with their rules and regulations and have waived the necessity of individual permits, if otherwise required.

Because we determine that N-CORPE was not required to obtain the permits specified by Estermann, we find no merit to this assignment of error.

*The District Court's Ruling That the*
*County Court Had Jurisdiction Over*
*N-CORPE's Amended Petition*
*to Condemn Was Not Error.*

Estermann claims that the district court erred when it failed to rule that the county court for Lincoln County in case No. CI 14-496 did not have jurisdiction over N-CORPE's amended petition to condemn because N-CORPE failed to comply with § 76-704.01 by failing to obtain certain permits and approvals. Even assuming that the district court could properly entertain this issue collaterally challenging the jurisdiction of the county court in the condemnation case, given our resolution of the permits issue, this assignment of error would be unavailing.

*The District Court Did Not Err When It*
*Denied Estermann's Motion to Amend*
*His Complaint for Injunction.*

Estermann claims that the district court erred when it denied his motion to amend his complaint for injunction. We find no merit to this assignment of error.

We first address the proper standard of review regarding a district court's denial of a motion to amend the pleadings. We note that this court has previously stated that we review a district court's decision on a motion for leave to amend a complaint for an abuse of discretion. See *Gonzalez v. Union Pacific RR. Co.*, 282 Neb. 47, 803 N.W.2d 424 (2011). However, in *Bailey v. First Nat. Bank of Chadron*, 16 Neb. App. 153, 741 N.W.2d 184 (2007), the Nebraska Court of Appeals addressed a case that was procedurally similar to the present case, and the considerations in *Bailey* and the instant case cause us to refine our standard of review.

In *Bailey*, the court assessed whether the district court had properly denied a request to amend a complaint after a motion for summary judgment had been filed but before the district court had ruled on the motion. With their motion to amend, the plaintiffs sought to add additional theories of recovery to

the theories set forth in the initial complaint. The district court denied the motion to amend, and the plaintiffs appealed.

The Court of Appeals in *Bailey* noted that prior to *Bailey*, the Nebraska appellate courts had not discussed the standard of review for denial of a motion to amend filed under Nebraska's new rules for notice pleading, specifically, Neb. Ct. R. of Pldg. § 6-1115(a) (previously codified as Neb. Ct. R. of Pldg. in Civ. Actions 15(a) (rev. 2003)). Section 6-1115(a) provides:

> A party may amend the party's pleading once as a matter of course before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted, the party may amend it within 30 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders.

The Court of Appeals in *Bailey* acknowledged that Nebraska's current notice pleading rules are modeled after the Federal Rules of Civil Procedure and that Nebraska courts may therefore look to federal decisions for guidance. See *Kellogg v. Nebraska Dept. of Corr. Servs.*, 269 Neb. 40, 690 N.W.2d 574 (2005). Similarly to Nebraska's § 6-1115(a), Fed. R. Civ. P. 15(a)(2) provides that once a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

[13] With respect to the denial of leave to amend under the Federal Rules of Civil Procedure, it has been stated by a federal appellate court:

> "Under the liberal amendment policy of Federal Rule of Civil Procedure 15(a), a district court's denial of leave to amend pleadings is appropriate only in those limited

circumstances in which undue delay, bad faith on the
part of the moving partly [sic], futility of the amend-
ment, or unfair prejudice to the non-moving party can
be demonstrated."

*Bailey v. First Nat. Bank of Chadron*, 16 Neb. App. at 163, 741
N.W.2d at 193, quoting *Roberson v. Hayti Police Dept.*, 241
F.3d 992 (8th Cir. 2001). We have similarly stated that "[a] dis-
trict court's denial of leave to amend pleadings is appropriate
only in those limited circumstances in which undue delay, bad
faith on the part of the moving party, futility of the amendment,
or unfair prejudice to the nonmoving party can be demon-
strated." *Golnick v. Callender*, 290 Neb. 395, 400, 860 N.W.2d
180, 187 (2015).

Federal courts generally review the denial of a motion to
amend for an abuse of discretion. See, e.g., *In re K-tel Intern.,
Inc. Securities Litigation*, 300 F.3d 881 (8th Cir. 2002). This
is consistent with that standard of review generally applied in
review of such motions in Nebraska. See, *Golnick v. Callender,
supra*; *Gonzalez v. Union Pacific RR. Co.*, 282 Neb. 47, 803
N.W.2d 424 (2011). However, in *Bailey v. First Nat. Bank of
Chadron*, 16 Neb. App. 153, 741 N.W.2d 184 (2007), the Court
of Appeals noted that the U.S. Court of Appeals for the Eighth
Circuit reviews de novo the underlying legal conclusion of
whether a proposed amendment would have been futile. The
*Bailey* opinion stated:

Federal courts generally review the denial of a motion
to amend for an abuse of discretion. See, *In re K-tel
Intern., Inc. Securities Litigation*, 300 F.3d 881 (8th Cir.
2002); 6 Charles Alan Wright et al., Federal Practice and
Procedure § 1484 (2d ed. 1990). Federal case law from
the Eighth Circuit indicates, however, that the Eighth
Circuit reviews de novo the underlying legal conclusion
of whether the proposed amendments to a complaint
would have been futile. See, *Marmo v. Tyson Fresh
Meats, Inc.*, 457 F.3d 748 (8th Cir. 2006); *U.S. ex rel.
Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552 (8th Cir.
2006) (citing *U.S. ex rel. Gaurdineer & Comito, L.L.P.*

*v. Iowa*, 269 F.3d 932 (8th Cir. 2001)), *cert. denied* 549 U.S. 881, 127 S. Ct. 189, 166 L. Ed. 2d 142. See, also, *Corsello v. Lincare, Inc.*, 428 F.3d 1008 (11th Cir. 2005) (underlying legal conclusion of whether particular amendment to complaint would have been futile is reviewed de novo); *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005) (where district court draws legal conclusion that amendment would be futile, conclusion is reviewed de novo).

16 Neb. App. at 163-64, 741 N.W.2d at 193.

In *Bailey*, the Court of Appeals adopted the federal standards of review outlined above. In doing so, the Court of Appeals stated that "we review the district court's denial of the [appellants'] motion to amend under Nebraska's rule 15(a) [now codified as § 6-1115(a)] for an abuse of discretion. However, we review de novo any underlying legal conclusion that the proposed amendments would be futile." *Id.* at 164, 741 N.W.2d at 193.

Notably, since *Bailey* was decided, all the federal circuit courts have adopted the standard that an appellate court reviews de novo the underlying legal conclusion of whether the proposed amendments to a complaint would have been futile. See, e.g., *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586 (5th Cir. 2016); *Maiden Creek Assocs. v. U.S. Dept. of Transp.*, 823 F.3d 184 (3d Cir. 2016); *Osborn v. Visa Inc.*, 797 F.3d 1057 (D.C. Cir. 2015); *Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510 (7th Cir. 2015); *Giorgio Foods, Inc. v. U.S.*, 785 F.3d 595 (Fed. Cir. 2015); *Barnes v. Harris*, 783 F.3d 1185 (10th Cir. 2015); *U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268 (4th Cir. 2014); *Mills v. U.S. Bank, NA*, 753 F.3d 47 (1st Cir. 2014); *Panther Partners v. Ikanos Communications*, 681 F.3d 114 (2d Cir. 2012); *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876 (9th Cir. 2010).

We agree with the Court of Appeals' holding in *Bailey*, and we now hold that an appellate court generally reviews the denial of a motion to amend a complaint for an abuse of discretion; however, an appellate court reviews de novo an

underlying legal conclusion that the proposed amendments would be futile.

In *Bailey v. First Nat. Bank of Chadron*, 16 Neb. App. 153, 741 N.W.2d 184 (2007), the Court of Appeals expressed the appropriate method to be used in assessing whether the proposed amendment should be denied on the basis of its futility. In *Hayes v. County of Thayer*, 21 Neb. App. 836, 842-43, 844 N.W.2d 347, 353-54 (2014), the Court of Appeals described *Bailey* as follows:

> In *Bailey, supra*, we quoted *Hatch* [*v. Department for Children, Youth & Families*, 274 F.3d 12 (1st Cir. 2001)], in which the First Circuit expressed that if leave to amend is not sought until after discovery is closed and a motion for summary judgment has been docketed, the proposed amendment must be not only theoretically viable but also solidly grounded in the record and supported by substantial evidence. We also quoted the Second Circuit's expression [in *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104 (2d Cir. 2001),] that in such a situation, the proposed amendment may be considered futile when the evidence in support of the proposed new claim creates no triable issue of fact and would not survive a motion for summary judgment.

Based on its analysis of the standards set forth by the First and Second Circuits, the Court of Appeals ably concluded in *Bailey*:

> We find the explanations and rationale used and applied by the First and Second Circuits to be sound and hold that if leave to amend is sought under Nebraska's rule 15(a) before discovery is complete and before a motion for summary judgment has been filed, the question of whether such amendment would be futile is judged by reference to Neb. Ct. R. of Pldg. in Civ. Actions 12(b)(6) (rev. 2003) [now codified as Neb. Ct. R. of Pldg. 6-1112(b)(6)]. Leave to amend in such circumstances should be denied as futile only if the proposed amendment cannot withstand a rule 12(b)(6) motion to dismiss.

If, however, the rule 15(a) motion is made in response to a motion for summary judgment and the parties have presented all relevant evidence in support of their positions, then the amendment should be denied as futile only when the evidence in support of the proposed amendment creates no triable issue of fact and the opposing party would be entitled to judgment as a matter of law.

16 Neb. App. at 169, 741 N.W.2d at 196-97.

[14] In *Hayes*, the Court of Appeals stated that "[b]oth the notion that 'substantial evidence' must be presented and the notion that the evidence must be such as would create a 'triable issue of fact' that could survive summary judgment are expressions of the same standard." 21 Neb. App. at 843, 844 N.W.2d at 354. In *Hayes*, the plaintiffs had filed a motion to amend the complaint after discovery had been closed and the defendant had filed a motion for summary judgment, and in fact, the district court had already sustained the defendant's motion for summary judgment and entered judgment in favor of the defendant. Based upon the reasoning set forth in *Bailey*, the Court of Appeals stated in *Hayes* that "the appropriate standard for assessing whether [the plaintiffs'] motion to amend should be determined futile is that the proposed amendment must be not only theoretically viable but also solidly grounded in the record and supported by substantial evidence sufficient to give rise to a triable issue of fact." *Id*. at 844, 844 N.W.2d at 354.

In the present case, we apply this standard set forth above to assess Estermann's claim that the district court erred when it denied his motion to amend the complaint. Estermann filed his motion to amend the complaint after discovery had been completed and after N-CORPE had filed its motion for summary judgment. In his appellate brief, Estermann states that although he alleged in his original complaint that N-CORPE failed to obtain necessary approval from Kansas, he did not allege in his original complaint that N-CORPE was required to obtain approval specifically from RRCA. Estermann sought to include the specific allegation that N-CORPE failed to

obtain approval from RRCA in his proposed amended complaint. In denying Estermann's motion for leave to amend his complaint, the district court stated that any issues raised in the proposed amended complaint could "be dealt with under the original complaint," and "[a]s such, the amendment is futile . . . ."

As stated above, Nebraska, Kansas, Colorado, and the United States of America are parties to the Compact, and the Republican River Basin has been the subject of the Compact since 1943. The Compact allocates to each of the states an agreed-upon share of the water supply within the Republican River Basin—roughly 49 percent to Nebraska, 40 percent to Kansas, and 11 percent to Colorado. Pursuant to the Compact, the States created the RRCA to calculate the Republican River Basin's annual virgin water supply and to determine whether each State's use of that water is within its allocation under the Compact. See *Kansas v. Nebraska*, ___ U.S. ___, 135 S. Ct. 1042, 191 L. Ed. 2d 1 (2015).

In 2002, the Compact was modified via the FSS, which was approved by the U.S. Supreme Court in *Kansas v. Nebraska, supra*. The Court stated that the FSS "established detailed mechanisms to promote compliance with the Compact's terms." 135 S. Ct. at 1050. The FSS "aim[s] to accurately measure the supply and use of the Basin's water, and to assist the States in staying within their prescribed limits." *Id*. This is done through detailed accounting procedures and the utilization of a ground water model that are set forth in the FSS.

In support of his argument, Estermann points to section III.B.1.k. of the FSS, which states that a moratorium on new wells shall not apply to:

Wells acquired or constructed by a State for the sole purpose of offsetting stream depletions in order to comply with its Compact Allocations. Provided that, such Wells shall not cause any new net depletion to stream flow either annually or long-term. The determination of net depletions from these Wells will be computed by the RRCA Groundwater Model and included in the State's

Computed Beneficial Consumptive Use. *Augmentation plans and related accounting procedures submitted under this Subsection III.B.1.k. shall be approved by the RRCA prior to implementation.*

(Emphasis supplied.) Estermann asserts that the N-CORPE project is such an "augmentation plan" that requires approval by the RRCA prior to the N-CORPE project's implementation. Brief for appellant at 37.

We disagree that this or any other section of the FSS requires N-CORPE to obtain the RRCA's approval prior to the construction or operation of the N-CORPE project. This section of the FSS refers to the fact that the RRCA must approve augmentation plans and related changes to the RRCA accounting procedure before a State may receive augmentation credit. The term "augmentation plan" does not refer to the actual construction or operation of the project itself, but, rather, an augmentation plan under the FSS sets forth the methods for how to calculate the augmentation credit the State wishes to receive that will be taken into account when considering whether the State has complied with its allocated percentage of use of the virgin water supply in the Republican Riven Basin under the Compact. An augmentation plan does not require that the RRCA approve the actual construction or operation of such project.

Our reading of the FSS is consistent with the record. The primary author of the N-CORPE augmentation plan explained that the DNR developed the N-CORPE augmentation plan "consistent with the straightforward methodologies of the RRCA Accounting Procedures and Reporting Requirements." He further explained that the N-CORPE augmentation plan "provides an example of the accounting method that would be used to quantify the [augmented water supply] Credit." Thus, although RRCA approval would be necessary to approve the N-CORPE augmentation plan and the related accounting procedures in order to receive an augmentation credit, the FFS does not require RRCA approval for the physical construction and operation of the N-CORPE project. Stated

another way, to the extent the State wishes to alter the amount of credit it receives for augmentation water under the FSS accounting procedures, it would need to obtain approval from the RRCA, but the RRCA's approval is not a prerequisite to N-CORPE's physically implementing the project itself or its operation. Therefore, N-CORPE was not required to obtain the approval of the RRCA before implementing the N-CORPE project.

Because we determine that N-CORPE was not required to obtain the approval of the RRCA in order to implement the augmentation plan, Estermann's proposed amendment to his complaint is not theoretically viable and it is not supported by substantial evidence sufficient to give rise to a triable issue of fact. See *Hayes v. County of Thayer*, 21 Neb. App. 836, 844 N.W.2d 347 (2014). Therefore, upon our de novo review, we determine the district court did not err when it determined that Estermann's proposed amendment was futile and denied his motion to amend his complaint. We find no merit to this assignment of error.

*District Court Did Not Err When It Determined*
*That Common Law Does Not Prohibit*
*N-CORPE From Removing Ground*
*Water From Overlying Land.*

Estermann claims that the district court erred when it determined that Nebraska common law does not prohibit N-CORPE from removing ground water from the overlying land. We find no merit to this assignment of error.

As an initial matter, we clarify that Estermann does not claim that he has an interest in ground water that is being adversely impacted by the fact that N-CORPE is withdrawing ground water from a well field and releasing that water into Medicine Creek to augment the flow of the water. Compare *In re Referral of Lower Platte South NRD*, 261 Neb. 90, 621 N.W.2d 299 (2001) (concerning landowner's objection to withdrawal and transfer of ground water from his property, where ground water was being transferred away from

overlying land to neighbor's property, and landowner argued there was significant adverse effect upon him).

[15] We have previously stated that Nebraska's common law does not allow water to be transferred off overlying land. See *In re Referral of Lower Platte South NRD, supra*. However, we have made it clear that the Legislature may provide exceptions to this common-law rule. See *id*. We have stated:

"Since the Nebraska common law of ground water permitted use of the water only on the overlying land, legislative action was necessary to allow for transfers off the overlying land, even for as pressing a need as supplying urban water users.

". . . [T]he Legislature has the power to determine public policy with regard to ground water and . . . it may be transferred from the overlying land only with the consent of and to the extent prescribed by the public through its elected representatives."

*In re Referral of Lower Platte South NRD*, 261 Neb. at 94, 621 N.W.2d at 303, quoting *State ex rel. Douglas v. Sporhase*, 208 Neb. 703, 305 N.W.2d 614 (1981), *reversed on other grounds* 458 U.S. 941, 102 S. Ct. 3456, 73 L. Ed. 2d 1254 (1982).

With the general rule that the Legislature may provide exceptions to the common-law prohibition of the transfer of ground water off the overlying land in mind, we turn to the present case. In this regard, we note that Neb. Rev. Stat. § 2-3238 (Reissue 2012), provides that each NRD

shall have the power and authority to develop, store and transport water, and to provide, contract for, and furnish water service for domestic purposes, irrigation, milling manufacturing, mining, metallurgical, and any and all other beneficial uses, and to fix the terms and rates therefor. Each district may acquire, construct, operate, and maintain dams, reservoirs, ground water storage areas, canals, conduits, pipelines, tunnels, and any and all works, facilities, improvements, and property necessary therefor. No district shall contract for delivery of water for irrigation uses within any area served by any irrigation

district, public power and irrigation district, or reclamation district, except by consent of and written agreement with such irrigation district, public power and irrigation district, or reclamation district.

Neb. Rev. Stat. § 46-715 (Cum. Supp. 2016) provides that an NRD may create an integrated management plan in order to manage a river basin, subbasin, or reach. N-CORPE is such an integrated management plan, and one of its purposes is to augment the flow of Medicine Creek in order to manage the water level in the Republic River Basin. N-CORPE does so by withdrawing ground water from a well field in Nebraska and releasing the water into Medicine Creek to augment the flow. The Legislature has specifically authorized NRD's to utilize augmentation projects as part of an integrated management plan. See § 46-715(3)(e).

Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions are consistent, harmonious, and sensible. *In re Interest of Tyrone K.*, 295 Neb. 193, 887 N.W.2d 489 (2016). Reading these statutes in pari materia, we determine that NRD's have the power and authority to transport water and that they may do so by utilizing an augmentation project as part of an integrated management plan. Therefore, the district court did not err when it determined that N-CORPE is not prohibited by common law from utilizing ground water to augment the flow of Medicine Creek.

*No Issue of Material Fact Exists as to*
*Whether N-CORPE's Condemnation*
*Meets a Public Purpose.*

Estermann claims that the district court erred when it failed to find that there were issues of material fact regarding whether N-CORPE's condemnation action was for a public use. He contends that these issues preclude entry of summary judgment. We find no merit to this assignment of error.

It is well settled that it is essential that property taken under the power of eminent domain be for a public use and not a private one. *Burlington Northern Santa Fe Ry. Co. v. Chaulk*, 262 Neb. 235, 631 N.W.2d 131 (2001). In support of his argument that N-CORPE's easement is not for a public use, Estermann relies on *Burger v. City of Beatrice*, 181 Neb. 213, 147 N.W.2d 784 (1967). Estermann's reliance on *Burger* is misplaced.

In *Burger*, the landowners sought to enjoin a city from proceeding in eminent domain to obtain easements over their property to install wells and withdraw ground water beneath the surface of their lands. This court determined that the withdrawal of the ground water was largely for the private use of two private companies. We noted that although the benefit of the easements to the companies may furnish some employment and increase business in the area, "such a public interest does not constitute a public purpose under the power of eminent domain." *Id*. at 223, 147 N.W.2d at 791. Accordingly, this court determined that the purpose of the easements was for a private use, not a public use, and that therefore, it was not proper under eminent domain.

Estermann argues that just as in *Burger*, the easement sought by N-CORPE is for private use, not public use, because the N-CORPE project's purpose is to help private irrigators. However, at the hearing on the motion for summary judgment, the district court received evidence which described in detail how N-CORPE's project would be operated and what the purpose of the project was. The purpose was to augment flows of Medicine Creek to offset surface water depletions through the Republican River Basin in order to achieve the target flows identified in the Compact. The evidence shows that the overriding purpose of the N-CORPE project is to achieve compliance with the Compact; any use by private irrigators is incidental to this purpose. Further, the evidence indicates that the State's "[f]ailure to comply with the . . . Compact can expose the State of Nebraska to significant liability." Unlike in *Burger*, where the easements sought were for a private

use, even viewing the evidence in a light most favorable to Estermann, the purpose of the easement sought by N-CORPE is for a public use. Therefore, we determine that the district court did not err when it determined that N-CORPE's condemnation action is for a public use.

## CONCLUSION

As explained above, we determine generally that the district court did not err when it granted the appellees' motion for summary judgment. Among our determinations are the following: that N-CORPE had the authority to exercise the power of eminent domain, that N-CORPE did not need certain permits and approvals as alleged by Estermann, that the district court did not abuse its discretion when it denied Estermann's motion to amend the complaint, that N-CORPE is not prohibited by common law from removing ground water from overlying land, and that there is no material issue of fact regarding whether the condemnation is for a public use. Therefore, we affirm the decision of the district court which granted the appellees' motion for summary judgment and dismissed Estermann's complaint.

AFFIRMED.